UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 08-028 (ESH) |
| | : | |
| v | : | |
| | : | |
| DAVID FLYTHE | : | |
| | : | |

**UNITED STATES' MOTION FOR GUIDELINE CREDIT
AND MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves the Court, pursuant to § 3E1.1(a) & (b) of the Sentencing Guidelines, to adjust the defendant's offense level down three levels reflecting the defendant's acceptance of responsibility for this offense. The United States also submits this memorandum in aid of sentencing.

**I.      BACKGROUND**

On February 14, 2008, a grand jury indicted defendant, David E. Flythe, in a three count indictment charging as its lead charge, Unlawful Possession with Intent to Distribute 100 Grams or More of Phencyclidine, in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A)(iv). On March 11, 2008, the grand jury returned a superseding indictment to correct a technical error in Count One, namely that the substance defendant allegedly possessed with intent to distribute was 100 grams or more of a *mixture and substance* of PCP, in violation of 21 U.S.C. § 841 (b)(1)(B)(iv). A subsequent analysis of the suspected narcotics recovered in this case revealed that the recovered substance was 94.6 grams of a mixture and substance containing PCP, and 9.2 grams of marijuana.

On April 14, 2008, defendant pled guilty to a one-count information charging Unlawful

Possession with Intent to Distribute Phencyclidine, in violation of 21 U.S.C. §§ 841 (a)(1) and 841 (b)(1)(C). At that time the defendant signed a "Statement of offense" and admitted to the following:

On January 15, 2008, at approximately 5:55 p.m., police officers of the Metropolitan Police Department executed a search warrant at 4740 Benning Road, Southeast, Apartment 204, Washington, D.C., which is a two bedroom apartment in which the defendant's father, David Flythe Sr., lived. The officers knocked and announced at the front door to the apartment and forced entry when there was no response from inside. When the officers entered the apartment they found the defendant and three other men inside. Gilbert Cowan and Jason Fleming were on the couch in the living room; Quinton Bright was standing in the dining room. The defendant, David Flythe, ran from the kitchen and was stopped in the hallway outside the bedrooms. A search of the apartment resulted in the recovery of 94.6 grams of a mixture and substance containing a detectable amount of Phencyclidine, known as PCP, and 9.2 grams of marijuana.

Specifically, in the living room police found a scale and plastic bag that contained 12 one millimeter glass vials of PCP, two ziplock bags of marijuana, several burned marijuana cigarettes, and photographs of the defendant and personal papers with the defendant's name on them. In the kitchen, police found a Romarm semi-automatic assault rifle loaded with 30 rounds of ammunition in plain view next to the refrigerator. They also found two one ounce vials of PCP, a box containing 144 empty one milliliter glass vials and an eye dropper, and a plastic bag that contained bottle caps for the empty vials. They further located a second bag with seven one ounce vials of PCP, and a box with 144 empty one milliliter glass vials with caps and a digital scale. Finally, police found additional empty glass vials with PCP residue in them and an

additional eye dropper.  In defendant's father's bedroom, police found additional empty vials, a scale, mail matter in defendant's name, photographs of defendant, and .45 and .40 caliber ammunition.  On the strength of this and other evidence, the government would have proven at trial beyond a reasonable doubt that the defendant David Flythe constructively possessed the PCP recovered from the apartment with the intent to distribute it.

The suspected PCP recovered during the search warrant was later submitted to the Drug Enforcement Agency's laboratory where chemical analysis determined that the substance was a mixture and substance containing PCP with a combined net weight of 94.6 grams.  The suspected marijuana was submitted to the Drug Enforcement Agency's laboratory where chemical analysis determined that the substance was marijuana with a combined net weight of 9.2 grams.

## II.   SENTENCING CALCULATION

### A.   Statutory Minimums and Maximums

Pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), the crime of Unlawful Possession With Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Phencyclidine  carries a penalty of a maximum sentence of twenty years of imprisonment, a fine of $1,000,000, and a term of supervised release of at least three years if a term of imprisonment is imposed.

### B.   Sentencing Guidelines Calculation

The Guidelines calculation utilized in the Presentence Investigation Report ("PSR") calculates the defendant's total offense level at 23.  See PSR ¶ 27.  (This calculation contemplates a three-level decrease to the defendant's base offense level pursuant to Section 3E1.1 of the Guidelines).   The PSR calculates the defendant's criminal history as Category III.

See PSR ¶ 35. Therefore, the PSR calculates the Guideline range for the defendant at 57 to 71 months. See PSR ¶ 66.

### III.   GOVERNMENT'S RECOMMENDATIONS

#### A.   Acceptance of Responsibility

The government agrees that the defendant's base offense level should be decreased by three points pursuant to Section 3E1.1 of the Sentencing Guidelines. He entered a guilty plea, thereby admitting the conduct comprising the offense, and he has cooperated in the pre-sentence investigation. Accordingly, the government is moving the Court to grant a three-level decrease in the offense level pursuant to § 3E1.1 of the Sentencing Guidelines.

#### B.   Application of the Federal Guidelines post-Booker

The Court should impose a sentence at the middle of the Guidelines' range consistent with the statutory mandatory minimum. "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." United States v. Booker, 543 U.S. 220, 264 (2005) (citing 18 U.S.C. § 3553(a)(4) & (5)). The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. A sentence within the Guideline range is reasonable in this case because it would help further the goals articulated in 18 U.S.C. § 3553(a) such as "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) "the need to avoid unwarranted sentence disparities among defendants

with similar records who have been found guilty of similar conduct."

  C.  Basis for Government's Sentencing Recommendation

  Pursuant to 18 U.S.C. § 3553(a), the Court should impose a sentence in the middle of the defendant's effective Guideline range, or approximately 64 months incarceration. This middle-range sentence is appropriate for a number of reasons. First, the nature and conduct of defendant's offense is extremely serious. He possessed 94.6 grams of PCP and 9.2 grams of marijuana and a semi-automatic rifle loaded with 30 rounds of ammunition.[1] The apartment in which defendant was found was stocked with numerous vials for the distribution of PCP, three additional firearms, and numerous additional pieces of live ammunition. There were three other persons in the apartment, but defendant Flythe, based on the mail matter found in the apartment, appears to have been the principal resident. Although defendant is not responsible for all four of the weapons found in the apartment, the guns and drugs and paraphernalia demonstrate that defendant was running a major distribution operation for PCP in this city and that that operation was backed with the guns necessary to protect such an operation from other criminals.

  Defendant's history and characteristics are mixed, but point against a sentence at the low end of the guidelines. On the one hand, as evidenced by the letters attached to counsel's memorandum, defendant has three people in his life who appear to love him genuinely and want him around. On the other hand, defendant appears to be a professional drug dealer. He has had no other job for six years. Just last June, defendant was arrested (and convicted) for possession of PCP. Defendant is 33, past the age at which some young men who hustle drugs turn to more

---

[1] See ¶ 12 of PSR. Counsel states in error that the gun was not loaded. Def.'s Mem. at 3.

legal pursuits. Instead, defendant Flythe continues on selling drugs despite a long history of convictions for drug and weapons offenses. Nor can defendant's conduct be minimized as the actions of a drug addict; defendant's drugs of choice appear to be marijuana and alcohol, not crack, PCP or heroin. In the government's view, defendant should be sentenced in the middle of his guideline range of 57 to 71 months, i.e., to a term of incarceration of 64 months. Such a sentence is necessary to promote respect for the law, provide just punishment for the offense and adequately deter the defendant's criminal conduct, and there are no factors that warrant the defendant being treated differently from other similarly situated defendants.

## IV.   CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant to 64 months of incarceration.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

BY:   ____/s/ David P. Saybolt___
DAVID P. SAYBOLT
Assistant United States Attorney
Virginia Bar
U.S. Attorney's Office
555 Fourth Street NW, Room 9108
Washington, DC 20530
(202) 514-7585 (w)
(202) 353-9415 (f)
David.Saybolt@usdoj.gov